UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATRINA WOODALL, ET AL.,

    Plaintiffs,

v.

COUNTY OF WAYNE, ET AL.,

    Defendants.

Case No. 17-13707

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [10], AND DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS [18]**

This putative class action is the third filed by women formerly incarcerated at the Wayne County Jail who are challenging the constitutionality of group strip searches. Plaintiffs seek declaratory, injunctive, and monetary relief under 42 U.S.C. § 1983. They allege that in the course of these searches, both male and female correction officers taunted them, insulted them, and humiliated them, while subjecting them to unsanitary and degrading conditions.

**FACTUAL BACKGROUND**

Plaintiffs, Katrina Woodall, Katana Johnson, Kelly Davis, Joanie Williams, Latoya Hearts, and Cynthia Whack-Finley brought this lawsuit against the County of Wayne, Wayne County Sheriff Benny Napoleon in his official capacity, and

Officer Terri Graham in her individual capacity. Plaintiffs were all incarcerated in the Wayne County Jail for different periods of time between 2010 and 2014. They allege that they were made to strip in full view of male guards, officers, employees, and inmates. (Compl. ¶ 23). Plaintiffs and other female inmates were "forced to bend over and spread their vaginal parts and anus under the pretense of searching for contraband." (Id. at ¶ 25). Exposure to menstrual discharge heightened the unhygienic and dehumanizing effect of these directives. (Id. at ¶ 26). Plaintiffs allege that guards, including Defendant Graham, would routinely degrade and humiliate Plaintiffs by viciously commenting on their appearances and sexuality. (Id. at ¶¶ 28-30).

Defendants maintain that the two types of searches at issue are "Registry Searches" and Safety/Sanitation Searches." The former is employed when inmates enter the jail from the outside, and the latter is employed periodically, without announcement, and also includes a search of the inmates' cells. (Dkt. 10, pg. 6). They deny allegations of abusive treatment. They also contend that both types of searches are now conducted on an individual basis.

## PROCEDURAL HISTORY

Previous plaintiffs have attempted to represent this class, and this case raises similar, but by no means identical, factual and legal questions. The first was filed pro se by Janine Weathington on August 13, 2012. *Weathington v. City of Detroit,*

*et al.*, No. 5:12-cv-13573 [Dkt. # 1] (E.D. Mich. 2012) (O'Meara, J.). Plaintiff filed a motion for class certification on October 16, 2013, and an amended motion to certify class on February 24, 2014. Id. at Dkt. 30 & 45. The motion for class certification was administratively terminated by the Magistrate Judge on July 31, 2014. On June 16, 2015, following a Report and Recommendation, the court granted Defendants' Motion to Dismiss on the grounds that Weathington had not exhausted her administrative remedies as required by the Prison Litigation Reform Act. Id. at Dkt. 101; *see also Weathington v. Cnty. Of Wayne*, 2015 U.S. Dist. LEXIS 79031 (E.D. Mich. May 22, 2015). The court gave the Plaintiff 30 days to substitute a lead plaintiff for their class action. Plaintiff did not, and the case was dismissed on August 3, 2015. Id. at Dkt. 102.

Meanwhile, Amanda Sumpter, represented by the same counsel, had filed a similar complaint on December 17, 2014. *Sumpter v. County of Wayne*, No. 5:14-cv-14769 (E.D. Mich. 2014).[1] Plaintiff filed a motion to certify a class on March 12, 2015. Id. at Dkt. 23. On June 7, 2016, the court granted the defendants' motion for summary judgment and denied the motion for class certification, without prejudice. Id. at Dkt. 58; *Sumpter v. Cnty. of Wayne*, 2016 U.S. Dist. LEXIS 73626 (E.D. Mich.,

---

[1] This case was originally heard by Judge Levy, but, upon Defendants' Motion to Consolidate, it was transferred to Judge O'Meara.

June 7, 2016). On August 18, 2017, that decision was affirmed 2-1 in *Sumpter v. Wayne County*, 868 F.3d 473 (6th Cir. 2017).

On November 14, 2017, Plaintiffs in this suit, who were putative class members in the prior suits, filed their Complaint [1]. Defendants filed a Motion to Dismiss on April 19, 2018. Plaintiffs filed a Motion to Certify class on June 28, 2018 [18]. These motions are full briefed, and the Court held a hearing on March 19, 2019.

## I. **Statute of Limitations**

The applicable statute of limitations for § 1983 actions is three years. *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). Defendants have raised challenges to the timeliness of the plaintiffs' and the class members' claims.

The named plaintiffs' claims have been tolled during the pendency of *Weathington*. "The commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had he suit been permitted to continue to a class action." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552 (1974).

The Court must therefore determine when *Weathington* was commenced as a class action. Plaintiffs put the date at August 13, 2013, when the suit was filed, and defendants propose the date of February 24, 2014, when the plaintiff, represented by counsel, brought her amended motion for class certification. *American Pipe* tolling is designed to protect the claims of potential class members who might otherwise be

forced to sue before the statute of limitations elapsed. *Id*. at 550-551. It is therefore immaterial whether Janine Weathington's initial, pro se class action was legally sound; potential class members would have been on notice that there was a class action under which they could shelter their claims. Ms. Weathington's initial complaint, however, provides no clear signs of being a class action (allegations of general jail conditions and several uses of the term "plaintiffs" notwithstanding). The operative start date for tolling under *Weathington* is therefore October 16, 2013.[2] Plaintiffs Whack-Finley and Williams are therefore dismissed as Plaintiffs, as they were released from custody in May and June of 2010. (Compl. ¶¶ 19, 21). The Plaintiff with the next oldest claim (based only on dates of custody, which form an outer boundary of the claims' ages) is Ms. Davis, who was released from Wayne County Jail in June 2013. Her claim was tolled after approximately four months.

The parties next dispute whether *American Pipe* tolling extended through the litigation of *Sumpter*. The Sixth Circuit has prohibited tolling a class action that was commenced during the pendency of a prior class action. *See In re Vertrue, Inc.*

---

[2] Defendants argue that a different date should be used for tolling as to Defendant Graham. Officer Graham was not named in the *Weathington* case until the May 5, 2014 Amended Complaint. Officer Graham would have had notice of the suit, however, as several of her coworkers were named, and she was not prejudiced by the late addition, as Wayne County Corporation Counsel continued to defend the suit. For purposes of the statute of limitations. the amended complaint therefore relates back to the date of the original pleading, pursuant to FED. R. CIV. P. 15(c)(1)(C). There is no difference between the statute of limitations as applied to the municipal defendants and as applied to the individual defendant.

*Marketing and Sales Practices Litigation*, 719 F.3d 474 (6th Cir. 2013). "The purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification." *Wyser Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005). The *Weathington* Court had not decided the motion for class certification prior to the filing of *Sumpter* on December 17, 2014 or its motion for class certification on March 12, 2015. Plaintiff references the July 31, 2014 "administrative termination" of the class action, but as the transcript of the Magistrate Judge's July 29, 2014 conference with the parties on this matter made clear, the class action was only being held in abeyance pending the resolution of dispositive motions. As the Magistrate Judge explained,

> So I think we should go ahead with the motion for summary judgment in the normal course of things. With respect to the class certification motion, what I commonly do under these circumstances since we have an indefinite time period for resolution of the motion for summary judgment, is I'd simply like to terminate the class certification motion administratively without prejudice and then once there is a decision, a final decision on the motion for summary judgment and then we would, assuming the case isn't disposed of, then we would simply administratively reopen that motion and address it in -- in the normal course of things based on a schedule that we would set up at that time.

Case No. 5:12-cv-13573, Dkt. 103, Transcript of Jul. 29, 2014 Conference, pg. 8.

Judge O'Meara clearly thought the class action was still pending, because the court offered Plaintiffs an opportunity to substitute a new lead Plaintiff to represent the class after Ms. Weathington's claims were dismissed. Plaintiffs will therefore be unable to avail themselves of *American Pipe* tolling for the pendency *Sumpter*. The

statute of limitations began to run again 30 days after *Weathington's* dismissal on September 3, 2015, and continued to run until Plaintiffs filed this case on November 14, 2017. Two years and seven to eight months had run from Ms. Davis' statute of limitations. She, and the remaining Plaintiffs, brought this suit in a timely manner.

The class action is not timely, however. The Supreme Court limited the tolling provisions of American Pipe in *China Agritech v. Resh*, 138 S. Ct. 1800 (2018). *China Agritech* held that American Pipe tolling does not preserve successive class claims that are brought outside the statute of limitations. *Id*. at 1811 ("Time to file a class action falls outside the bounds of *American Pipe*.").

*China Agritech* must be applied to all cases pending before federal courts. Plaintiffs dispute this, and cite case law tracing back to the Supreme Court's old test on when its holdings are retroactive. *See Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971). Such cases are no longer good law, however. *See Toms v. Taft*, 338 F.3d 519, 529 (6th Cir. 2003) (*Chevron Oil* "has been overruled to the extent that it permits the selective prospective-only application of a new rule of law."); *see also Michel v. Federated Dep't Stores* (*In re Federated Dep't Stores*), 44 F.3d 1310, 1317 (1995) ("the Supreme Court overruled *Chevron Oil* and adopted a strict rule requiring retroactive application of new decisions to all cases still subject to direct review."). Indeed, the Supreme Court has made clear,

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full

retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993).

As an Illinois District Court held when considering the same issue, "It would be error to refuse to apply *China Agritech* retroactively here." *Practice Mgmt. Support Servs. v. Cirque Du Soleil Inc.*, 2018 U.S. Dist. LEXIS 129633 (N.D. Ill. August 2, 2018).

Plaintiffs also try to distinguish this case from *China Agritech* on the grounds that *China Agritech* involved the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which had unique procedural requirements for class actions. This indeed was the gist of Justice Sotomayor's concurrence, but that concurrence makes clear that the majority's ruling was much broader than the PSLRA. *China Agritech*, 138 S. Ct. 1811-15. The three-year statute of limitations bars claims which accrued before November 14, 2014.

Plaintiffs recently produced affidavits by two women alleging that they were victimized by group strip searches that occurred in 2016 and 2018. (Dkt. 30). Nonetheless, all—or nearly all—of the original putative class members' claims are barred by the statute of limitations. Plaintiffs' Motion for Class Certification is therefore foreclosed by *China Agritech*. If plaintiffs want to file a new motion for class certification consisting of members whose claims accrued on or after November 14, 2014, they may still do so.

## II. Defendant's Motion to Dismiss

### LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure directs the Court to dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (internal citations omitted). To survive Defendants' motion to dismiss, Plaintiffs "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The complaint must be construed in the light most favorable to plaintiff, and its well-pleaded facts must be accepted as true." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must draw all reasonable inferences in favor of the plaintiff. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). It is the defendant's burden of showing that the plaintiff has failed to state a claim for relief. *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). Although the motion to dismiss standard is quite liberal, and "the factual allegations of the complaint are accepted as true, 'we need not accept as true legal conclusions or unwarranted factual inferences.'" *Treesh*, 487 F.3d at 476 (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

Defendant's also move for dismissal pursuant to FED. R. CIV. P. 12(b)(5): insufficient service of process.

**ANALYSIS**

1. Equitable Relief

Plaintiffs do not have standing to bring a suit for equitable relief.[3] None of the current Plaintiffs are incarcerated, and the Sixth Circuit held in *Sumpter* that individuals who had already left jail did not have standing to sue for injunctive or declaratory relief regarding jail conditions. *Sumpter*, 868 F.3d at 490-491 ("In the absence of evidence demonstrating a 'sufficiently real and immediate' threat of being subjected to group strip searches at the Wayne County Jail again, plaintiff has failed to establish standing to seek injunctive or declarative relief."). *Sumpter* cited *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), for the proposition that to warrant injunctive or declaratory relief, "a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized" and that "threat must be actual and imminent, not conjectural and hypothetical." *Id*. at 493.

Plaintiffs argue that inmates can continue to press for injunctive relief even once they have left jail. *See Gerstein v. Pugh*, 420 U.S. 103 (1975). They may be

---

[3] Plaintiffs argue that this motion should not have been brought under a 12(b)(6) standard. They are correct. Defendant should have made this argument under Rule 12(b)(1) or 12(c). But since standing goes to subject matter jurisdiction, it cannot be waived, and it can be raised at any time.

right, but the rule announced in *Gerstein* applied to mootness, not standing. The Plaintiffs in *Gerstein* had standing when they brought suit, but their claims were threatened with mootness once they were released from custody. *Id*. at 105-06. In this case, none of the Plaintiffs had standing when they requested equitable relief. This defect cannot be cured simply because the claims may be "capable of repetition, yet evading review." *See Sumpter*, 868 F.3d at 490 (explaining the distinction between standing and mootness as "standing applies at the sound of the starting gun, and mootness picks up the baton from there"). The Court lacks jurisdiction over Plaintiffs' suit for injunctive relief, because none of the Plaintiffs had a "'personal stake in the outcome of the controversy' at the outset of the litigation." *Id*. (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

2. Qualified Immunity

Defendant argues that the Sixth Circuit in *Sumpter* already decided that Officer Graham is entitled to qualified immunity for strip searches undertaken before 2014. Though the cases are similar, the allegations and the procedural postures are too different to reflexively import *Sumpter's* qualified immunity holding. Sixth Circuit precedent forecloses qualified immunity for those who conduct strip searches in a constitutionally unreasonable manner. *Stoudemire v. Michigan Department of Corrections*, 705 F.3d 560 (6th Cir. 2013) (holding that an officer was not entitled to qualified immunity for conducting a humiliating group strip search where "a

right, but the rule announced in *Gerstein* applied to mootness, not standing. The Plaintiffs in *Gerstein* had standing when they brought suit, but their claims were threatened with mootness once they were released from custody. *Id*. at 105-06. In this case, none of the Plaintiffs had standing when they requested equitable relief. This defect cannot be cured simply because the claims may be "capable of repetition, yet evading review." *See Sumpter*, 868 F.3d at 490 (explaining the distinction between standing and mootness as "standing applies at the sound of the starting gun, and mootness picks up the baton from there"). The Court lacks jurisdiction over Plaintiffs' suit for injunctive relief, because none of the Plaintiffs had a "'personal stake in the outcome of the controversy' at the outset of the litigation." *Id*. (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

2. Qualified Immunity

Defendant argues that the Sixth Circuit in *Sumpter* already decided that Officer Graham is entitled to qualified immunity for strip searches undertaken before 2014. Though the cases are similar, the allegations and the procedural postures are too different to reflexively import *Sumpter's* qualified immunity holding. Sixth Circuit precedent forecloses qualified immunity for those who conduct strip searches in a constitutionally unreasonable manner. *Stoudemire v. Michigan Department of Corrections*, 705 F.3d 560 (6th Cir. 2013) (holding that an officer was not entitled to qualified immunity for conducting a humiliating group strip search where "a

right, but the rule announced in *Gerstein* applied to mootness, not standing. The Plaintiffs in *Gerstein* had standing when they brought suit, but their claims were threatened with mootness once they were released from custody. *Id*. at 105-06. In this case, none of the Plaintiffs had standing when they requested equitable relief. This defect cannot be cured simply because the claims may be "capable of repetition, yet evading review." *See Sumpter*, 868 F.3d at 490 (explaining the distinction between standing and mootness as "standing applies at the sound of the starting gun, and mootness picks up the baton from there"). The Court lacks jurisdiction over Plaintiffs' suit for injunctive relief, because none of the Plaintiffs had a "'personal stake in the outcome of the controversy' at the outset of the litigation." *Id*. (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

2. Qualified Immunity

Defendant argues that the Sixth Circuit in *Sumpter* already decided that Officer Graham is entitled to qualified immunity for strip searches undertaken before 2014. Though the cases are similar, the allegations and the procedural postures are too different to reflexively import *Sumpter's* qualified immunity holding. Sixth Circuit precedent forecloses qualified immunity for those who conduct strip searches in a constitutionally unreasonable manner. *Stoudemire v. Michigan Department of Corrections*, 705 F.3d 560 (6th Cir. 2013) (holding that an officer was not entitled to qualified immunity for conducting a humiliating group strip search where "a

reasonable officer would have been on notice that the search was unreasonable under the circumstances and devoid of any legitimate penological justification related to security or order."); *accord Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *Salem v. Mich. Dep't of Corr.*, 643 Fed. Appx. 526 (6th Cir. 2016); *Williams v. City of Cleveland*, 771 F.3d 945, 952-56 (2014). A strip search is unreasonable if it lacks a legitimate penological justification. *Sumpter*, 868 F.3d at 482.

*Sumpter* only held that the defendants provided a legitimate penological justification for group strip searches by referencing the high volumes of inmates entering the jail and other exigent circumstances. "Neither *Stoudemire*, nor *Williams*[4] nor any other case, would have put Graham on notice that conducting group strip searches when the volume of inmates made individual searches imprudent was unreasonable." *Id*. at 488.

Plaintiffs allege more than that Officer Graham conducted group strip searches, however. They allege that Graham routinely degraded and humiliated Plaintiffs by her comments and actions. (Compl. ¶ 29). Moreover, the district court in *Sumpter* considered the issue of qualified immunity only after full discovery, as

---

[4] The Sixth Circuit in *Sumpter* makes much of the fact that because *Williams* was appealed from a Motion to Dismiss, not a Motion for Summary Judgment, the *Williams* court did not find that it was appropriate to confront the jail's reasons for conducting the strip searches in the manner in which it did. *Sumpter*, 868 F.3d at 486 (citing *Williams*, 771 F.3d at 955-56). The procedural posture on this case is that of *Williams*, not that of *Sumpter*.

the issue of whether the searches were conducted with a legitimate penological justification was a fact question turning on the circumstances of the search. *See Cochram v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011) ("This 'objective legal reasonableness' standard analyzes claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene."). Because the allegations in this case are more severe than those on which the *Sumpter* court passed judgment, and because the factual record is underdeveloped in terms of the factual circumstances of the strip searches in this case, Defendant Graham has not shown that she is entitled to qualified immunity.

3. *Monell* Municipal Liability

"While a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). Indeed, § 1983 provides for municipal liability only where Plaintiffs were injured by actions undertaken pursuant to municipal policy. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978).

Plaintiffs allege that Defendants Wayne County and its Sherriff maintained degrading group strip searches as a matter of policy, practice, and custom in the

Wayne County Jail. (Compl. ¶ 56). Plaintiffs muster hundreds of affidavits as proof of the existence of this policy. These claims are not foreclosed by *Sumpter*, because the Sixth Circuit never ruled on the merits of Amanda Sumpter's case for *Monell* liability. The Sixth Circuit was under the impression that plaintiff did not believe that defendants were seeking summary judgment on the municipal liability issue, and so the plaintiff's cursory references to her supporting affidavits were akin to "hiding elephants in mouseholes." *Sumpter*, 868 F.3d at 489. "In short, because plaintiff failed to bring the affidavits to the district court's attention in connection with the cellblock claim, it had no occasion to consider them in that context." *Id*. This case is not even at the stage of drawing inferences from affidavits. Plaintiffs have carried their burden under FED. R. CIV. P. 8(a) of demonstrating plausible grounds for relief against the municipal Defendants.

4. Timeliness of Service

Defendant seeks dismissal under FED. R. CIV. P. 12(b)(5): insufficient service of process. FED. R. CIV. P. 4(m) states,

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Defendants observe that Wayne County was served 112 days after the Complaint was filed. Officer Graham was not served for 125 days. Defendants move for dismissal without prejudice on these grounds. They oppose granting Plaintiffs an extension of the summons *nunc pro tunc* on the grounds that Plaintiffs could have no good cause for failure to make timely service because their office is a block away from the Defendants. Further, they argue, such an extension would be extremely prejudicial because every extra day for which the Defendants are forced to defend a class tolls the statute of limitations for their entire putative class.

Plaintiffs' counsel excused the delay by referencing a subordinate's confusion over the switch from 120-days for service to 90-days for service. The Court need not determine if this is "good cause." As the Advisory Committee to the 1993 Amendments to Rule 4(m) made clear, the Rule "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." FED. R. CIV. P. 4, Advisory Committee Notes, 1993 Amendment, Subdivision (m). "Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action." *Id*. Referencing these Notes, the Supreme Court has held that even absent a showing of good cause "courts have been accorded discretion to enlarge the 120-day[5] period." *Henderson v. United States*, 517 U.S. 654, 662 (1996); *accord Rose v. Berea*, 327 F.R.D. 628, 633-634

---

[5] That period is of course now 90 days.

(S.D. Ohio 2018). Defendants' prejudice from the month-long-delay is *de minimis*—especially since the class claims have been disposed of—compared to Plaintiffs' prejudice if all their claims were time-barred due to an administrative error. Plaintiffs are granted a *nunc pro tunc* extension of time.

## CONCLUSION

Even in light of adverse Sixth Circuit precedent in a very similar case, Plaintiffs have pled facts sufficient to establish grounds for relief under 42 U.S.C. § 1983. They have not established grounds for injunctive or class-wide relief, however.

**IT IS ORDERED** that Defendant's Motion to Dismiss [10] is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs Whack-Finley and Williams are dismissed.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification [18] is **DENIED** without prejudice. Plaintiffs may revive their motion for class certification if they can show a numerosity of class members whose claims accrued on or after November 14, 2014.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: March 26, 2019     Senior United States District Judge