UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATRINA WOODALL, ET AL.,

    Plaintiffs,

v.

COUNTY OF WAYNE, ET AL.,

    Defendants.

Case No. 17-13707

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS [51]; DENYING PLAINTIFFS' MOTION TO CONSOLIDATE CASES [50]; AND DENYING DEFENDANTS' MOTION TO SEVER [57]**

Plaintiffs are women formerly incarcerated by the Wayne County Sherriff. They allege that they were subjected to demeaning, unsanitary, abusive, and invasive group strip searches, and seek relief under 42 U.S.C. § 1983. The United States Court of Appeals for the Sixth Circuit had previously ruled that similar conduct undertaken by Corporal Terri Graham was not actionable, because Defendant Graham was protected by qualified immunity. *See Sumpter v. Wayne County*, 868 F.3d 473 (6th Cir. 2017). The Sixth Circuit did not reach the question of whether Wayne County could be held liable for as a municipality under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for unconstitutional strip searches.

Plaintiffs have moved to certify a class of similarly situated women who will allege that Wayne County and its Sherriff are liable under *Monell* for constitutional violations undertaken by its officers in the Wayne County Jails. The Court will certify the class for the purposes of determining whether the municipality bears liability under § 1983. This class action, though necessarily implicating individual factual narratives, will be primarily concerned with the core legal question of whether or not Wayne County maintained a custom, practice, or policy that violated the Constitution.

## FACTUAL BACKGROUND

Plaintiffs, Katrina Woodall, Katana Johnson, Kelly Davis, Joanie Williams, Latoya Hearts, and Cynthia Whack-Finley brought this lawsuit against the County of Wayne, Sheriff Benny Napoleon in his official capacity, and Officer Graham in her individual capacity. Plaintiffs were all incarcerated in the Wayne County Jail for months-long periods of time between 2010 and 2014. The two types of searches at issue are "Registry Searches" and Safety/Sanitation Searches." The former is employed when inmates enter the jail from the outside, and the latter is employed periodically, without announcement and also includes a search of the inmates' cells. (Dkt. 10 pg. 6).

Plaintiffs allege that they were made to strip in full view of male guards, officers, employees, and inmates. (Compl. ¶ 23). Plaintiffs and other female inmates

were "forced to bend over and spread their vaginal parts and anus under the pretense of searching for contraband." (*Id*. at ¶ 25). Plaintiffs would be forced to comply with these directives even while undergoing their menstrual cycles, resulting in menstrual discharges. (*Id*. at ¶ 26). Plaintiffs allege that the guards, including Defendant Graham, would routinely degrade and humiliate Plaintiffs by crudely commenting on their appearance and sexuality while comparing them to animals (*Id*. at ¶¶ 28-30).

## PROCEDURAL BACKGROUND

This case was filed on November 14, 2017. A Motion to Dismiss [10] was filed on April 19, 2018. On June 28, 2018, Plaintiffs filed a Motion to Certify Class [18]. On March 26, 2019, following a hearing, the Court granted in part and denied in part the motion to dismiss and denied the motion for class certification without prejudice. (*See* Dkt. 31). On June 14, 2019, Plaintiffs moved to consolidate this case and a companion case, *Sepulveda v. Wayne County*. That case has since been dismissed, and the Motion to Consolidate [50] is now moot. On June 25, 2019, Plaintiffs filed a Renewed Motion to Certify Class [51]. On July 18, 2019, Defendants filed a Motion to Sever Plaintiffs' Cases for Trial [57]. All three motions are fully briefed, and a hearing was held on December 5, 2019.

## LEGAL STANDARD

Before certifying a class, the Court conducts a "rigorous analysis" of the requirements of FED. R. CIV. P. 23. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The Court "has broad discretion in determining whether a particular case may proceed as a class action so long as it applies the criteria of Rule 23 correctly." *Cross v. Nat. Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977). Plaintiff, as the party seeking class certification, bears the burden of proof. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

The Supreme Court has emphasized that Plaintiffs must factually prove that they meet the requirements of Rule 23.

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc…Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 374 (2011).

Despite the need for factual inquiries, the Court has elsewhere cautioned against reading *Duke* as authorization to make merits determinations for their own sake.

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013).

# ANALYSIS

Plaintiffs propose four subclasses, and they match short-form affidavits from each putative class member to the class they are found in. The four proposed subclasses are as follows:

> Class No. 1 (1) all females who were housed, detained, and/or incarcerated by the Wayne County Sheriff at any of the three Wayne County Jail Divisions from the period of November 14, 2014 until the date of judgment or settlement of this case, who, without a legitimate penological interest, were ~~forcibly~~[1] exposed in the nude to members of the opposite sex while being strip searched pursuant to the Wayne County Sheriff's policies, practices, and/or customs, and who allege they have suffered a compensable injury as a result of the search;
>
> Class No. 2 (2) all females who were housed, detained, and/or incarcerated by the Wayne County Sheriff at any of the three Wayne County Jail Divisions from the period of November 14, 2014, until the date of judgment or settlement of this case, who, without a legitimate penological interest, were stripped searched in a group with other inmates, ~~and which searches did not afford privacy from others,~~[2] pursuant to the Wayne County Sheriff's policies, practices, and/or customs, and who allege they have suffered a compensable injury as a result of the search;
>
> Class No. 3 (3) all females who were housed, detained, and/or incarcerated by the Wayne County Sheriff at any of the three Wayne County Jail Divisions from the period of November 14, 2014, until the date of judgment or settlement of this case, who, without a legitimate penological interest, were stripped searched under unsanitary and/or unhygienic conditions, including being exposed to the bodily fluids of other inmates who were being strip searched, pursuant to the Wayne County Sheriff's policies, practices, and/or customs, and who allege they have suffered a compensable injury as a result of the search;
>
> Class No. 4 (4) all females who were housed, detained, and/or incarcerated by the Wayne County Sheriff at any of the three Wayne

---

[1] Plaintiffs in their reply have stipulated to the removal of the word "forcibly," in response to Defendants' charge that it is vague.

[2] Plaintiffs have also stipulated to the removal of the word "privacy," and presumably this would entail the removal of the entire clause.

> County Jail Divisions from the period of November 14, 2014 until the date of judgment or settlement of this case, who, without a legitimate penological interest, were subject to derogatory gender-based comments by Defendant Graham during strip searches, and who allege they have suffered a compensable injury as a result of the search.

(Dkt. 51, pg. 2).

Many courts have considered the suitability of class certification to jail and prison group strip search claims. A number have certified classes, holding that the core issue of the legality of a blanket strip search predominates over individualized legal issues. *See Tardiff v. Knox County*, 365. F.3d 1 (1st Cir. 2004); *In Re Nassau County Strip Search Cases*, No. 99-cv-2844, 2010 WL 3781563 (E.D.N.Y. 2010); *McBean v. City of New York*, 260 F.R.D. 120 (S.D.N.Y. 2009); *Jones v. Murphy*, 256 F.R.D. 519 (D. Maryland 2009); *Smith v. Dearborn County, Ind.*, 244 F.R.D. 512 (S.D. Ind. 2007); *Moyle v. County of Contra Costa*, No. C-05-02324, 2007 WL 4287315 (N.D. Cal. Dec. 5, 2007); *Blihovde v. St. Croix*, 219 F.R.D. 607 (W.D. Wisc. 2003); *Maneely v. City of Newburgh*, 208 F.R.D. 69 (S.D.N.Y. 2002).

Several courts have also declined to certify classes for group strip search cases. These courts have tended to find that individual inmates' claims—and their unique circumstances—either predominate over the class-wide claims or differ from each other so radically as to render class certification inadvisable. *See Roadhouse v. Las Vegas Metropolitan Police Department*, 290 F.R.D. 535 (D. Nevada 2013); *Rattray v. Woodbury County, Iowa*, 253 F.R.D. 444 (N.D. Iowa 2008); *Gustafson v.*

*Polk County, Wis*. 226 F.R.D. 601 (W.D. Wisc. 2005); *Augustin v. Jablonsky*, No. 99-cv-3126, 2001 WL 770839 (E.D.N.Y. Mar. 8, 2001); *Bledsoe v. Combs*, No. 99-153, 2000 WL 681094 (S.D. Ind. Mar. 14, 2000).

**Ascertainability**

As a threshold matter, Defendants argue that Plaintiffs' classes are impermissible fail-safe classes.

> [A] "fail-safe" class is one that includes *only* those who are *entitled* to relief. Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those "class members win or, by virtue of losing, they are not in the class" and are not bound. Such a result is prohibited in large part because it would fail to provide the final resolution of the claims of *all* class members that is envisioned in class action litigation.

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir. 2012) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir.2011).

*Young* made clear that "a 'fail-safe' class is one that includes *only* those who are *entitled* to relief." Plaintiffs' proposed class would not run afoul of this rule, because even if all the class members were required to prove that they suffered constitutional violations in order to enter the class, they would still all fail to prove that they were entitled to relief, absent a showing of municipal liability on the part of Wayne County. *Monell* imposes evidentiary burdens above and beyond what is necessary to prove class membership, and the classes are therefore far from "fail-safe."

## **Rule 23(a) requirements**

Fed. R. Civ. P. 23(a) requires a class to meet the four requirements of numerosity, commonality, typicality, and adequacy of representation.

1. Numerosity

Defendants have agreed to not contest numerosity.

2. Commonality

Plaintiffs must show that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Plaintiffs maintain that the question of *Monell* liability raises such common questions, but Defendants argue that individual liability need be determined on an individual basis, because each specific group strip search will raise its own unique question as to whether the search occurred, whether it violated the individual class members' rights, and whether it was "reasonably related to legitimate penological interests."

At issue is whether the policy at question violated the Fourth Amendment. *See, e.g., Maneely*, 208 F.R.D. at 78 ("There is a common issue at the core of this case -- whether defendants maintained an unconstitutional blanket strip search policy during the class period."). The existence or nonexistence of an unconstitutional policy will thus determine the outcome of the class action for the whole class.

> What matters to class certification…is not the raising of common 'questions' -- even in droves -- but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 350 (citing Richard A. Nagareda, "Class Certification in the Age of Aggregate Proof," 84 N. Y. U. L. REV. 97, 132 (2009)).

Common answers could be generated in response to questions like whether Wayne County permitted men to be present during group strip searches. The fact that individual detainees will have radically different claims does not diminish the utility of answering these core common questions. *See McBean*, 260 F.R.D at 134-35 (holding that the commonality and typicality requirements were met by pretrial detainees alleging unconstitutional strip searches even where the special circumstances of some of the potential class members made a strip search permissible). Class-wide questions, like what other officials at the Wayne County Sherriff's Office knew of Officer Graham's conduct, could yield class-wide answers from depositions and interrogatories.

3. Typicality

"The prerequisite of typicality requires that a sufficient relationship exist between the injury to the named plaintiff and conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). Although the named plaintiffs' claims "must fairly encompass the class members' claim, they need not always involve the same facts or law." *Bobbitt v. Academy of Court Reporting*, Inc., 252

F.R.D. 327, 339 (E.D. Mich. 2008) (citing *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998)).

Defendants observe that the four named Plaintiffs were all incarcerated prior to the end of 2013, when group strip searches were permissible under Wayne County Policy, whereas the proposed class members who were incarcerated after 2014 would all have been strip searched with the benefit of new policies that forbid group strip searches. Plaintiffs contest that this policy change was ever fully implemented, however, and they allege that the proposed class members and the named plaintiffs all encountered similar treatment. This question, whether Defendants' policy change was actually carried out, goes to the core of the factual disputes in this case.

Typicality calls for a similarity of claims. Defendants' argument, that the proposed class members could not in fact have suffered the treatment underlying their claims, because such conduct would have violated Wayne County policies, does nothing to show that the claims themselves are of a fundamentally different sort than the named plaintiffs' claims. "[I]n considering the typicality requirement, a court asks specifically whether the class representatives had suffered the same kind of injury as other class members of the class." *Blihovde*, 219 F.R.D. at 617. The existence or seriousness of the proposed class members injuries will depend on whether or to what extent Defendants violated the Constitution, not Wayne County Jail policies.

4. Adequacy of Representation

The Court must ask whether Plaintiffs' counsel is adequate and whether there are conflicts between the named plaintiffs and the class members. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982). Defendants argue that the named plaintiffs will have no incentive to continue this litigation after their own claims are resolved. This objection takes for granted that the claims are not capable of common resolution—a position that has already been rejected. Plaintiffs' counsel are experienced civil rights litigators, and the named Plaintiffs have the same interests in this case as the potential class members.

**Rule 23(b) Factors**

Plaintiffs seek to certify a class action under FED. R. CIV. P. 23(b)(1) & (b)(3). The Court finds that certification is appropriate under Rule 23(b)(3) and so will not analyze Rule 23(b)(1).

The Rule reads as follows:

(b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
 …
 (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

Rule 23(b)(3) requires that class claims predominate over individual claims and that class litigation is the superior means of resolving the dispute. Defendants argue that individual claims will predominate over class claims, because the Wayne County Sherriff will contest each and every alleged constitutional violation by each and every Plaintiff—in effect requiring mini-trials on whether each former inmate can enter the class. They argue that the fee-shifting provision of § 1983 allows individual claimants to feasibly bring such suits themselves, providing each Plaintiff with a greater deal of autonomy over her case than she would have as a class member.

These arguments, though they raise valid concerns, do not account for the overwhelming utility of class resolution of the *Monell* liability issue. It may very well be onerous to screen all potential class members, but such pre-screening need not be undertaken with a high degree of specificity. All that will matter is whether the potential class member was subjected to conduct which falls within one of the four subclass definitions. Whether that conduct entitles each member to damages, and the amount of those damages, will of course have to be determined on an individual basis, but that is common to many class actions.

> No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

As the First Circuit found when affirming a district court's decision to certify a class of pretrial detainees who alleged unlawful strip searches, "the need for individualized damage decisions does not ordinarily defeat predominance where there are still disputed common issues as to liability." *Tardiff*, 365 F.3d at 7. The screening process, however difficult it will be, will certainly be less burdensome than adjudicating a steady flow of individual lawsuits. Critically, class certification allows the parties to argue once, and the Court to decide once, the question of whether the County is liable for maintaining a custom, practice, or policy of unconstitutional strip searches. Defendants contend that such an approach is backwards because it addresses municipal liability before addressing whether there is an underlying constitutional violation. This is an artificial distinction. Plaintiffs need not pursue individual causes of action against specific officers in order to prove that the Wayne County Sherriff maintained an unconstitutional policy, practice, or custom that caused them injury.

Further, if Defendants continue to defend individual suits by invoking qualified immunity, plaintiffs may never even be able to reach the question of

whether an underlying constitutional violation occurred unless they also prove *Monell* liability. *See Sumpter*, 868 F.3d at 488 (declining to finish the Fourth Amendment analysis once it was clear that Defendant Graham was protected by qualified immunity). The Wayne County Sherriff's alleged *Monell* liability may very well be the lynch pin of all potential Wayne County illegal strip search cases. Answering the question once, for everyone, is the most efficient course of action.

A class action, though not without problems, is superior to dozens of individual suits that all present the same question. *See Jones* 256 F.R.D. at 26 (acknowledging that while manageability problems can arise in a strip search class action, they will likely be outweighed by the "inherent advantages of class action litigation."). It is also superior to the alternative—dozens of viable suits that are never brought. Many of the potential class members will likely have low damages and limited access to legal services (despite the fee-shifting provisions of § 1983). *See Tardiff*, 365 F.3d at 7 ("It is enough for the superiority determination here that for most strip search claimants, class status here is not only the superior means, but probably the only feasible one (one-way collateral estoppel aside), to establish liability and perhaps damages."); *see also Blihovde*, 219 F.R.D. at 622 (recognizing that since illegal strip searches tend not to leave physical injuries, damages are often low or hard to prove, and the incentive to file suit is correspondingly diminished).

Managing this class may be more cumbersome than managing a securities fraud class, where class membership and damages can be readily verified, but illusory administrative convenience is no reason to extinguish an indeterminate number of legitimate claims. *See Maneely*, 208 F.R.D. at 78 ("[I]t would be improper to let manageability concerns overwhelm the predominance question."). If individualized damages determinations become necessary, the Court and the parties will have a range of options from which to choose. *See Jones* 256 F.R.D. at 525-26 (enumerating some of the options available for awarding individual damages and reserving ruling on the proper damages methodology at the certification stage of the class action).

Though every class member's claims will begin with the story of what happened to her, similarities between these stories, and the collective nature of many of the strip searches, underscore the utility of the class action. For instance, several of the affidavits on the record in this case allege that Defendant Graham maintained, in view of the strip-search area, a snack-shop frequented by male officers. Defendants have contested that the snack shop provided visibility to the strip-search area. This is exactly the sort of factual dispute common to many of the class claims that is so well-suited for class-wide adjudication.

**Procedural Factors**

Defendants also raise two procedural partial objections to class certification.[3]

First, they argue that the Prison Litigation Reform Act ("PLRA") would require exhaustion of remedies for all class members who were incarcerated on the date of November 14, 2017, the day the suit was filed. They observe that no Sixth Circuit case has analyzed this specific interplay between Rule 23 and the PLRA. The question seems to be whether a class member who is not incarcerated at the time she joins the class action is bound by the PLRA if she was incarcerated when the suit was filed. The PLRA reads as follows: "No action shall be brought with respect to prison conditions under § 1983…by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000). Since the class members cannot be considered to have brought the action until they are at least members of the class, the plain language of the statute undercuts this argument, as at least one other district court has held. *See In Re Nassau County Strip Search Cases*, 2010 WL 3781563 at *8.

---

[3] Defendants also reiterate their position that the statute of limitations has run for both Johnson and Woodall for their claims against Graham. The Court already addressed these arguments in its Order [31] on Defendant's Motion to Dismiss, and Defendants make clear that they raised these objections in their response for purposes of preservation. The Court declines to revisit its earlier ruling.

Second, Defendants argue that the statute of limitations was not tolled between the Court's decision to deny class certification on March 26, 2019 and Plaintiffs' second motion for class certification on June 25, 2019.

Tolling for class certification only stops when the district court "definitively" rules on class certification. *In re Vertrue, Inc*. 719 F.3d 474, 480 (6th Cir. 2013).[4] Because the Court denied Plaintiffs' first Motion for Class Certification without prejudice, it did not "definitively" resolve the issue. Indeed, the Court noted, "[i]f Plaintiffs want to file a new motion for class certification consisting of members whose claims accrued on or after November 14, 2014, they may still do so." (Dkt. 31, pg. 8). The statute of limitations continued to toll between the denial of the first motion for class certification and the filing of the renewed motion of class certification.

**<u>Defendants' Motion to Sever [57]</u>**

As a final matter, Defendant has also moved to sever the four named Plaintiffs' cases for trial. This motion will be denied without prejudice. Defendants are concerned that the trial may not be fair to Defendant Graham if dozens of women are allowed to testify against her at once. Defendant Graham may renew this motion

---

[4] The rationale for this rule is that potential class members should not feel compelled to rush to file their own suits before the statute of limitations runs if there is still a chance that they will have the opportunity to be members of a class action. *American Pipe & Construction v. Utah,* 414 U.S. 538, 553 (1974).

in advance of trial if such a trial becomes necessary. The details of how a jury trial will be conducted are best considered after all dispositive motions have been filed.

## CONCLUSION

Plaintiffs' proposed class, and their four proposed subclasses, will be certified as for allegations against Wayne County and the Wayne County Sherriff under *Monell*. The proposed class members raise similar claims that implicate similar legal and factual questions. Rule 23 was designed to allow class-wide resolution of such questions. As is common in such cases, the Court will retain the right to decertify the class if "unforeseen problems arise making class certification with respect to liability or damages inappropriate." *Jones* 256 F.R.D. at 526. Accordingly,

**IT IS ORDERED** that Plaintiffs' Renewed Motion to Certify Class [51] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Sever [57] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Consolidate Cases [50] is **DENIED AS MOOT**.

**SO ORDERED**.

                                                s/Arthur J. Tarnow
                                                Arthur J. Tarnow
Dated: January 23, 2020            Senior United States District Judge