UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KATRINA WOODALL, KATANA JOHNSTON, KELLY DAVIS, and LATOYA HEARST, <br><br> Plaintiffs, <br><br> v. <br><br> WAYNE COUNTY and OFFICER TERI GRAHAM, <br><br> Defendants. | Case No. 17-13707 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION [124]**

Four women—Katrina Woodall, Katana Johnston, Kelly Davis, and Latoya Hearst—were incarcerated at the Wayne County Jail at various points in 2013 and 2014. They say they were strip-searched by Jail officers in humiliating ways. Specifically, they say that Officer Teri Graham, who works the Jail's registry, strip-searched them in groups of five or more, made derogatory comments about their bodies, allowed men to see them being strip-searched, and maintained an unsanitary environment. And because many women—at least 99—claim they were subject to similar strip searches, Plaintiffs accuse Wayne County, the municipality in charge of the Jail, of ignoring a pattern of constitutional violations and failing to train its officers or otherwise address the issue, allowing the violations to continue.

This Court recently considered Defendants' motions for summary judgment against each plaintiff (ECF Nos. 89, 90, 91, 92), and denied them in part. Specifically,

the Court found that the following claims may proceed: (1) Hearst's claim against Graham for searches that occurred in January 2014 and (2) all four plaintiffs' *Monell* claims against Wayne County for injuries sustained in 2013 based on custom-of-acquiescence or failure-to-train theories.

Defendants (specifically the County) ask this Court to reconsider its decision on the *Monell* claims. (ECF No. 124.) In the alternative, the County asks this Court to re-open discovery so it can conduct additional depositions. (*Id.*)

## I. Arguments for Reconsideration

Local Rule 7.1(h) governs motions for reconsideration of non-final orders in this District. The rule makes clear that such motions are disfavored. E.D. Mich. LR 7.1(h)(2). They may only be brought in three circumstances: one, if "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision"; two, if there was an intervening change in controlling law, or; three, if new facts were discovered that could not have been discovered prior to the decision. E.D. Mich. LR 7.1(h)(2)(A)–(C).

As an initial matter, it is unclear whether the County's motion fits into any of these buckets for a proper motion for reconsideration. The County cites no intervening change in law or new facts that it could not have discovered before this Court issued its decision. Instead, the County's motion argues that the declarations from women who were formerly detained at Wayne County Jail—which were attached to Plaintiffs' prior motion for class certification (ECF Nos. 18-2, 18-3, 18-4,

18-5) and referenced in Plaintiffs' summary judgment response (ECF No. 102, PageID.3323)—cannot create an issue of fact for each plaintiff's *Monell* claim (ECF No. 124, PageID.3655). In doing so, the County either repeats arguments made in its summary judgment motions or raises new arguments that were not presented in its first motions. But a motion for reconsideration is not a vehicle for presenting the Court with arguments that should have been made in an original motion. Nor should it be used to express mere disagreement with the Court's decision absent a mistake in fact or law based on what was already presented to the Court. Accordingly, any argument already addressed in the Court's opinion on summary judgment will not be discussed again.

Nevertheless, the Court will address the County's new legal arguments on their merits. However, the Court will not consider evidence attached to the motion for reconsideration as these facts could have been presented to the Court in the County's initial motions but were not.

### A. Use of Generic Proof

The County argues that the "law of the case" is that municipal liability may not be established by "mass" or "generic" proof. In support of this argument, the County cites the Sixth Circuit's decision denying class certification in this case. (ECF No. 124, PageID.3665); *see also Woodall v. Wayne Cnty.*, No. 20-1705, 2021 WL 5298537, at *7–8 (6th Cir. Nov. 15, 2021). There, the Sixth Circuit states that "it is not enough to show generically that the County had a policy of acting with deliberate indifference toward the four types of unconstitutional strip searches (which were

3

allegedly conducted in violation of its formal policies). Rather, a class member must also show that the class member was herself subjected to a constitutional deprivation in the way that she was searched." *Id.* at *7.

The County is wrong about the "law of the case." The Sixth Circuit's opinion was about whether Plaintiffs' claims could be litigated as class claims under Federal Rule of Civil Procedure 23. The Sixth Circuit has not expressed any opinion on the merits of the individual plaintiffs' claims.

Further, as this Court extensively laid out in its opinion, each plaintiff showed that a reasonable jury could determine she was "herself subjected to a constitutional deprivation in the way she was searched." *Id.* at *7; *see also Woodall v. Wayne Cnty.*, — F. Supp. 3d —, 2022 WL 737502, at *12 (E.D. Mich. Mar. 10, 2022) ("In all, a reasonable jury could credit Plaintiffs' observations and determine that at least some of the time, even when no penological justification for a group strip search existed, registry officers would routinely conduct group strip searches instead of conducting individual searches 'when possible.'").

And, most importantly, the Sixth Circuit stated in its opinion that "[p]erhaps the first element—a clear pattern of unconstitutional strip searches—could be established for each of the four subclasses." *Woodall*, 2021 WL 5298537, at *7. So the same pattern of constitutional violations could be used to support each plaintiff's *Monell* claims. Given that the County's primary basis for reconsideration is that Plaintiffs did not present sufficient evidence of a pattern of constitutional violations, the Sixth Circuit's opinion does not change this Court's opinion on that issue.

4

To the extent the County attempts to use the Sixth Circuit's class-action ruling to challenge Plaintiffs' ability to show causation, the Court will not consider this argument because it was not raised at summary judgment. The Court also notes that the Sixth Circuit's statement that the "causation question would have to be decided on an individual basis," *Woodall*, 2021 WL 5298537, at *7, does not mean that Plaintiffs cannot use the same declarations to establish a pattern of constitutional violations and that indifference to this pattern is what resulted in each of their individual constitutional injuries. Contrary to the County's assertion, nowhere did the Sixth Circuit state that the "inmate statements, taken together, are not competent proof of a municipal liability claim[.]" (ECF No. 128, PageID.3720.) The Sixth Circuit merely stated that causation would have to be proven for each individual class member, meaning that individual issues would predominate over class issues making the claims inappropriate for class adjudication. Thus, Plaintiffs will be required to prove at trial that each of their individual strip searches was caused by the County's indifference. But this requirement has no bearing on whether the Court's opinion on summary judgment was correct, especially when causation was not raised in the initial motions.

### B. Declarations Under 28 U.S.C § 1746

The County also argues that the declarations are not "legitimate" under 28 U.S.C. § 1746(2). The statute states that for a declaration to be used as evidence, it must state "in substantially the following form" that "I declare (or certify, verify, or

5

state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

As with other grounds for reconsideration, the County did not present this argument in its motions for summary judgment or in its replies to the motions, though Plaintiffs cited to many of the declarations in their response. Further, the Court has already accepted many of these declarations as evidence at summary-judgment. And for good reason: many of the affidavits state they are submitted "without perjury, to the best of my ability, truthfully, and without duress." (*See, e.g.*, ECF No. 18-2, PageID.556.) That is substantially similar to the language provided in 28 U.S.C. §1746(2). And the submitted declarations that did not have this language, such as the letters submitted to Plaintiffs' counsel, were not considered by the Court. *Woodall*, 2022 WL 737502, at *17, n.3. So the Court's decision is not altered by this argument either.

### C. Pattern of Clearly-Established Constitutional Violations

The County's most significant legal argument for reconsideration relies on a line of Sixth Circuit cases which require the "violated right . . . be clearly established" when a plaintiff premises its *Monell* claim on deliberate indifference "because a municipality cannot deliberately shirk a constitutional duty unless that duty is clear." *See, e.g.*, *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994–95 (6th Cir. 2017).

Both of Plaintiffs' remaining *Monell* theories (custom-of-acquiescence and failure-to-train) require showing that the County acted with deliberate indifference,

6

which Plaintiffs say is met by indifference to a pattern of constitutional violations. Putting these two pieces together, Plaintiffs must show both the County's deliberate indifference to a clear and persistent pattern of federal rights being violated *and* that the federal rights were already clearly established when they were violated. If the violations that form the alleged pattern were not clearly established as constitutional violations at the time of the searches, then the County cannot be shown to have "deliberately shirk[ed] a constitutional duty[.]" *See Arrington-Bey*, 858 F.3d at 994.

In its summary-judgment opinion, the Court focused on Plaintiffs' allegations that they were strip searched in groups. In this context, the Court already identified what would be a clearly established constitutional right: "the right not to be subjected to a humiliating strip search in full view of several (or perhaps many) others unless the procedure is reasonably related to a legitimate penological interest." *Woodall*, 2022 WL 737502, at *9 (citing *Stoudemire v. Michigan Dep't of Corrections*, 705 F.3d 560, 575 (6th Cir. 2013)). In other words, under Sixth Circuit case law, it was clearly established in 2013 that group strip searches were unconstitutional if there was no countervailing penological interest. So for Plaintiffs to proceed with their *Monell* claims for group strip searches, they must show a pattern of group strip-searches at the Wayne County Jail without a legitimate penological justification.

Defendants argue that they have asserted a penological justification for group strip searches that occurred before November 2013: volume concerns. And, say Defendants, the declarations Plaintiffs used to prove a pattern of unconstitutional group strip searches do not dispute that there were volume concerns. Many of the

7

declarations merely state the individual was searched in a group without any mention of whether volume truly required it. So, the argument goes, no reasonable jury could find that the County was deliberately indifferent to a pattern of clearly-established constitutional violations because the County had an uncontested penological justification for the group strip searches that make up the alleged pattern.

In response, Plaintiffs first argue that they have created a genuine issue of fact as to whether the County had a penological justification for group strip searches before November 2013. For starters, as the Court has recognized, Woodall and Hearst's testimony has created an issue of fact as to whether there was a penological justification for the group strip searches they were a part of. *See Woodall*, 2022 WL 737502, at *7. And the declarations provide other evidence of officers intentionally waiting to conduct searches in groups when they could have conducted searches individually. For example, Karri Bulloch, who was incarcerated from 2010 to 2012, stated that she was searched "after enough women accumulate in the holding tank[.]" (ECF No. 18-2, PageID.557.) Jennifer Carter, who was incarcerated from July 2012 to November 2013, stated, "After a few hours, I was told to enter the room with all the females that were in the cell with [me] and strip nude in their presence." (ECF No. 18-2, PageID.569.) And a couple of other women stated that group strip searches were a common practice, rather than a necessity based on volume concerns, as the County states. A reasonable jury could credit this testimony and conclude that the County did not have a penological justification for at least some of the group strip

8

searches, and therefore, was deliberately indifferent to a pattern of known constitutional violations leading up to Plaintiffs' searches.

Second, Plaintiffs argue that they have provided evidence of other strip-search-related violations, and so even declarations that do not rebut the County's justification of volume concerns create a pattern of clearly-established constitutional violations. One such allegation Plaintiffs (other than Hearst[1]) have made and supported with the declarations is that the County conducted strip searches of women in view of either male correctional officers or male trustees (incarcerated people who have jobs around the jail).

The Court agrees that Plaintiffs have shown that a reasonable jury could find that there was a clear and persistent pattern of strip-searching women in front of men at the Jail. The County does not assert a penological justification for strip searching women in front of men. Instead, it argues that women were never strip searched in front of men at the Jail, which merely creates a fact issue. (ECF No. 90-11, PageID.2720, 2723 (Graham saying male officers or trustees were "not ever" in the change-out room or in the registry area when detainees were strip searched).)

Without a penological justification to balance out the condition of the searches, the declarations, if believed by a jury, provide sufficient evidence of a pattern of clearly established constitutional violations. *See Everson v. Mich. Dep't of Corrections*,

---

[1] As the Court noted in its summary judgment opinion, Hearst testified that she could hear men outside of the registry while being strip searched, but that she does not recall if any of the men saw her being strip-searched. *Woodall*, 2022 WL 737502, at *2; (ECF No. 91-6, PageID.2863, 2866).

9

391 F.3d 737, 757 (6th Cir. 2004) ("Our court has recognized that a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." (citing *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992))); *see also Brannum v. Overton Cnty. School Bd.*, 516 F.3d 489, 495 (6th Cir. 2008) ("Before *Kent,* we had not articulated the Fourth Amendment's protection as extending to the right to shield one's naked body from view by members of the opposite sex. But, since *Kent,* we have recognized this privacy right."); *Cf. Sumpter v. Wayne Cnty.*, 868 F.3d 473, 487 (6th Cir. 2017) ("Rather, *Stoudemire* [in 2013] held that the particularized right at issue in that case—freedom from an especially intrusive public strip search 'devoid' of justification—was clearly established."). So setting aside whether the declarations create a fact issue on the County's penological justification for group strip searches, Plaintiffs have also provided sufficient evidence for a jury to find deliberate indifference based on a pattern of conducting strip searches in front of people of the opposite gender. As that is another part of Plaintiffs' *Monell* claim, the County still cannot prevail on summary judgment for *Monell* claims based on injuries sustained in 2013.

In sum, the County's assertion that Plaintiffs cannot establish deliberate indifference to a clear and persistent pattern of constitutional violations to a jury because they cannot show that the alleged violations were clearly established does not merit reconsideration of its motions for summary judgment. Plaintiffs have

10

produced evidence that, at least on a few occasions, the County's asserted penological interest in conducting group strip searches (i.e., volume) may not have applied. A jury could credit this evidence and find that the group strip searches were conducted without justification, which is a clearly established constitutional violation, and by not acting to remedy them, the County was deliberately indifferent. Further, in addition to Plaintiffs' (except Hearst) own claims, many declarations allege that women were strip searched in view of men. The County has not asserted a penological interest in conducting searches in this way, and instead asserts that strip searches were not conducted in front of men. It is up to the jury to decide who to believe. And if it believes Plaintiffs and their witnesses, it could also conclude the County was deliberately indifferent to violations of clearly-established law by allowing strip searches to be conducted in front of men without justification.

## II. Request to Re-Open Fact Discovery

In the alternative to reconsideration, Defendants ask this Court to order Plaintiffs to identify "the specific witnesses who would be called to support their individual municipal liability claims." (ECF No. 124, PageID.3672.)[2] Defendants also request time to depose these individuals ahead of trial. (*Id.*)

The Court understands that, on one hand, the County cannot depose the 500 plus purported witnesses on Plaintiffs' witness list without more information as to

---

[2] In its reply, the County asserts that the Court ordered Plaintiffs to "identify, specifically, by name, each witness who would be called to support their own municipal liability claim." (ECF No. 128, PageID.3719.) It did not. The Court merely ordered Plaintiffs to respond to the County's request to reopen discovery. Plaintiffs oppose the request, so the Court will decide the issue.

11

who will be called. On the other hand, the County seems to have waited until summary judgment to raise the issue, hoping that the Court would grant summary judgment on that basis. But the Court agreed with Plaintiffs that the declarations (and the witnesses who made them) were part of the summary-judgment record and considered them in its analysis. The Court had no more information or means to analyze these declarations than Defendants.

So the Court will resolve the issue in the following way: when a trial date is set for this case, the Court will order the final pretrial order witness list to be due 90 days before trial. During this time, Defendants will have the opportunity to depose any of the witnesses that they have not already deposed.

Further, Plaintiffs shall identify the witnesses they know they will call as soon as they determine they will be called, even if that occurs before they submit a final pretrial order. It is likely that Plaintiffs already know several of the declarants they intend to call at trial and they should be disclosed immediately. At the very latest, Plaintiffs shall identify the witnesses they will call at trial in the proposed final pretrial order.

### III. Order

Defendants' motion for reconsideration (ECF No. 124) is DENIED for the foregoing reasons and the reasons provided in the opinion on summary judgment (ECF No. 122).

As for deposing witnesses that made declarations, Plaintiffs are ORDERED to identify the witnesses they know they will call at trial as soon as they determine they will be called.

Plaintiffs are also required to provide a final list of witnesses to be called during trial in the proposed final pretrial order. This proposed order will be due 90 days before the start of trial. In those 90 days, Defendants will have the opportunity to depose any trial witnesses they have not deposed already.

SO ORDERED.

Dated: May 10, 2022

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE