UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KATRINA WOODALL, KATANA JOHNSTON, KELLY DAVIS, and LATOYA HEARST, <br><br> Plaintiffs, <br><br> v. <br><br> WAYNE COUNTY and TERI GRAHAM, <br><br> Defendants. | Case No. 17-13707 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANTS' RENEWED MOTION TO SEVER PLAINTIFFS' CASES FOR TRIAL [141] AND ORDERING BIFURCATION OF INDIVIDUAL CLAIM FROM MONELL CLAIMS**

Four women—Katrina Woodall, Katana Johnston, Kelly Davis, and Latoya Hearst—were incarcerated at the Wayne County Jail at various points in 2013 and 2014. They say they were strip-searched by Jail officers in humiliating ways. Specifically, they say that Officer Teri Graham, who worked the Jail's registry, strip searched them in groups of five or more, made derogatory comments about their bodies, allowed men to see them being strip-searched, and maintained an unsanitary environment. And because many women—at least 99—claim they were subject to similar strip searches, Plaintiffs accuse Wayne County, the municipality in charge of the Jail, of knowing of a pattern of constitutional violations yet allowing the violations to continue.

After ruling on Defendants' motions for summary judgment against each plaintiff (and their motion for reconsideration), five claims are ready for trial—Hearst's individual claim against Graham for strip searches that occurred in January 2014 and all four plaintiffs' *Monell* claims against Wayne County for injuries sustained in 2013 based on custom-of-acquiescence and failure-to-train theories.

In advance of the March trial date, Defendants ask the Court to sever each plaintiff's claims from the others and conduct four separate trials. (ECF No. 141.) For the reasons given below, the Court finds that the claims are properly joined under Federal Rule of Civil Procedure 20 and declines to sever them.

However, noting that spillover prejudice from the *Monell* claims may sway the jury against Graham when it decides the claim against her individually, the Court will bifurcate the individual claim from the *Monell* claims. The jury will first hear evidence on Hearst's individual claim against Graham and reach a verdict for that claim, and then the same jury will hear evidence on Plaintiffs' *Monell* claims and reach a verdict as to those claims.

## I.

### A. Timeliness

Before addressing the merits, a brief word on the timeliness of the motion.

Plaintiffs argue that Defendants' motion to sever is untimely. (ECF No. 142, PageID.3810.) Defendants brought this motion about two months before the original trial date. The trial date has since moved though, and so now there are four months between the filing of the motion and trial. Plaintiffs filed their response before the

2

date was moved, so their argument on timeliness does not account for this change. And, factoring in the time for the Court to address the motion, two months seems like sufficient time for Plaintiffs to make any adjustments before trial if the cases were to be severed.

Further, when Defendants originally brought the motion to sever, Judge Tarnow (who was presiding over the case at the time) stated, "Defendant Graham may renew [her motion to sever] in advance of trial if such a trial becomes necessary." (ECF No. 81, PageID.2257–2258.) While it would have perhaps been helpful to renew this motion earlier—say in July 2022, when the Court first issued a trial schedule— the motion is not untimely. It was brought before trial, and there is sufficient time for the Court to address it without prejudice to the parties.

## B. Misjoinder

Now to the merits. Federal Rule of Civil Procedure 20 governs permissive joinder, and states, "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." An almost identical provision governs the joining of defendants. *See* Fed. R. Civ. P. 20(a)(2). The Court is mindful that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

### 1. Same series of occurrences

The first prong of Rule 20—that Plaintiffs assert any right to relief arising out of the same occurrence or series of occurrences—is governed by a "logical relationship" standard. *See Bellew v. Sullivan Cnty., Tenn.*, No. 2:19-CV-191, 2020 WL 5633856, at *2 (E.D. Tenn. Sept. 21, 2020) ("The Sixth Circuit has held that the term 'transaction' in Rule 20(a) depends less on the immediateness of the connection between a series of occurrences than the 'logical relationship' between them." (citing *Lasa Per L'Industria Del Marmo Soc. Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969))). That is, "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. . . . [so] Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (quoting 7 C. Wright, Federal Practice and Procedure § 1653 at 270 (1972)).

Here, Plaintiffs' *Monell* claims all arise out of the same series of occurrences: Graham's strip searches from February 2013 to August 2013 at the Wayne County Jail. Many courts have found that a pattern of violations, especially one connected to a single actor and alleged to be the result of a single policy, is sufficient to meet the requirements of Rule 20. *Crossley v. Dart*, No. 19-CV-8263, 2022 WL 444114, at *2 (N.D. Ill. Feb. 14, 2022) ("Plaintiff's *Monell* claim against Sheriff Dart in his official capacity strengthens his argument for joinder given that the officers' actions, in both

4

instances, implicate a system of CCDOC's decision making and policies."); *Jones v. City of St. Louis*, No. 4:21CV600, 2022 WL 1591792, at \*2 (E.D. Mo. May 19, 2022) (finding joinder appropriate where "all but one of the charges against the individual defendants encompass at least two Justice Center employees who acted or were continuing to act together as a part of the alleged custom or widespread practice of using excessive force or deprivation of water"); *Binns v. United Maint. Co.*, No. 20 C 4283, 2021 WL 168962, at \*4 (N.D. Ill. Jan. 19, 2021) ("Where plaintiffs' claims derive from the same type of alleged action by the same employee in the same facility, courts have found severance inappropriate."); *see also Swope v. Oneida Sch. Dist.*, No. 351, No. 4:17-CV-113, 2017 WL 3835606, at \*4 (D. Idaho Sept. 1, 2017); *Ivery v. Gen. Die Casters, Inc.*, No. 5:17-CV-37, 2017 WL 6270239, at \*4 (N.D. Ohio Dec. 8, 2017); *Bellew v. Sullivan Cnty., Tenn.*, No. 2:19-CV-191-DCLC-CRW, 2020 WL 5633856, at \*2 (E.D. Tenn. Sept. 21, 2020); *Nadhar v. Renaud*, No. CV-21-00275, 2022 WL 684338, at \*3 (D. Ariz. Mar. 8, 2022); *Longoria v. Kodiak Concepts LLC*, No. CV-18-02334, 2020 WL 1509353, at \*2 (D. Ariz. Mar. 30, 2020).

Here, Plaintiffs' *Monell* claims all implicate the same central issue—did Wayne County have a policy of conducting unconstitutional strip searches where women were unnecessarily searched in groups and in front of men leading to the unconstitutional searches of the four plaintiffs here? The Court has already determined that a reasonable jury could find that there was a pattern of these unconstitutional searches at the Wayne County Jail, that Wayne County knew about them, and that it did not train officers or take other action to prevent them from

5

happening. *See generally Woodall v. Wayne Cnty.*, 590 F. Supp. 3d 988 (E.D. Mich. 2022). And the alleged violations here all derive from substantially similar conduct of one individual—Graham. Given the pattern that is necessary to prove the *Monell* claims, and that the claims all arise from an alleged policy of indifference to Graham's conduct, the *Monell* claims all arise out of the same series of occurrences.

Although a closer call, Rule 20 is also not a basis for severing Hearst's individual claim against Graham. True, Hearst's individual claim is only about searches that occurred in 2014, while the *Monell* claims are only about searches that occurred in 2013. And Hearst does not need to show a pattern of unconstitutional strip searches to prove her individual claim. Nevertheless, like the *Monell* claims, her claim mainly derives from Graham's conduct at the Wayne County Jail while conducting registry searches. *See Binns v. United Maint. Co.*, No. 20 C 4283, 2021 WL 168962, at *4 (N.D. Ill. Jan. 19, 2021) ("Where plaintiffs' claims derive from the same type of alleged action by the same employee in the same facility, courts have found severance inappropriate."). And, just as Plaintiffs do in the *Monell* claims, Hearst similarly alleges she was subject to group strip searches (ECF No. 91-6, PageID.2859) and that she could hear men outside of the registry during these searches (*id.* at PageID.2863, 2866).

And in addition to the claims being similar, there will also be a substantial overlap in proof between Hearst's individual claim and the *Monell* claims. The two main witnesses of the 2014 strip searches—Hearst and Graham—are also primary witnesses for the *Monell* claims, as all four plaintiffs (including Hearst) will have to

6

prove their individual rights were violated to also prove their *Monell* claims. *Woodall*, 590 F. Supp. 3d at 1005 ("[T]he Court must first determine whether the plaintiffs presented evidence from which a jury could find that Graham violated their constitutional rights before it can consider if that violation was the result of the County's policies under *Monell*." (citing *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 597 (6th Cir. 2021))). And there is little evidence that would be relevant to Hearst's claim against Graham but not the *Monell* claims. The overlap in proof thus also weighs in favor of joining Hearst's individual claim for 2014 searches with the *Monell* claims. *Cf. Harris v. Erdos*, No. 1:21-CV-104, 2022 WL 3053496, at *5 (S.D. Ohio Aug. 3, 2022) ("[I]f the proof of one claim would have no connection with the proof of the other, the claims do not arise out of the same transaction or occurrence." (citing *Moore v. Mich. Dep't of Corr.*, No. 17-6107, 2018 U.S. App. LEXIS 25325, at *4–5 (6th Cir. Sep. 5, 2018))); *see also LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, It. v. Alexander*, 414 F.2d 143, 151 (6th Cir. 1969).

Defendants rely on two cases in which the courts severed *Monell* claims, but neither persuade. In *Baughman v. Lee County*, the Court severed the claims of 27 plaintiffs who alleged they were unnecessarily strip searched over a period of two years. 554 F. Supp. 2d 652, 653 (N.D. Miss. 2008). There are several factors that distinguish the present case. For one, there are only four plaintiffs, instead of 27, so there are fewer individual questions. Two, Plaintiffs' *Monell* claims all derive from searches that took place over six months (February through August 2013), which is a much narrower time frame than two years. Even adding in Hearst's individual claim

7

against Graham, the present case has a relevant time frame of February through August 2013 and a few days in January 2014, which is still narrower than two years. And three, the *Baughman* plaintiffs challenged the necessity of their strip searches, which is not at issue here. *See Florence v. Bd. of Chosen Freeholds of Cnty. of Burlington*, 556 U.S. 318, 339 (2012) (holding that strip searching detainees who are committed to the general population is constitutional and does not require reasonable suspicion). Plaintiffs here do not argue that they should not have been stripped at registry—they argue that the way in which they were strip searched was improper. Challenging the necessity of certain strip searches adds in more individual questions of probable cause, but those individualized inquiries are unnecessary in this case. So the Court declines to follow the *Baughman* court's reasoning on this issue.

Defendants also rely on *Stojcevski v. County of Macomb*, 143 F. Supp. 3d 675 (E.D. Mich. 2015). There, the court severed two *Monell* claims involving a "policy of deliberate indifference of medical needs," where two plaintiffs had different illnesses. *Id.* at 682–83. Though both *Stojcevski* and this case involve issues of deliberate indifference, the deliberate indifference in this case is much more narrowly and commonly defined. To show a municipality's deliberate indifference based on a pattern of violations, *Monell* requires the pattern of violations to be closely related to the violation the plaintiff says she suffered. *See Stewart v. City of Memphis, Tenn.*, 788 F. App'x 341, 344 (6th Cir. 2019) ("To establish that a municipality has ratified illegal actions, a plaintiff may prove that the municipality has a pattern of inadequately investigating similar claims. Importantly . . . they must concern

8

comparable claims."). Here, that means Plaintiffs must show a pattern of strip searches at the Wayne County Jail where the searches were either done in groups or in the presence of the opposite gender. Thus, the policy in question is defined more specifically than the one alleged in *Stojcevski*, which alleged a pattern of deliberate indifference to at least two different illnesses. Compounding the broadness of that policy is that deliberate indifference to a serious medical need is defined differently depending on the illness and requires municipal actors to draw different inferences. So while there was purportedly a policy that connected the two *Monell* claims, it was a single policy in name only. Further, the factual differences between the two claims extended beyond the different illnesses. The plaintiffs in *Stojcevski* were also housed in separate units and were provided treatment by different medical providers. So beyond the generality of the policy, there were far greater differences in the evidence and witnesses they would each need to prove their individual Eighth Amendment violations compared to the evidence needed for each plaintiff here to show she was subject to an unconstitutional strip search. So the Court is also not persuaded by *Stojcevski*.

## 2. Common question of law or fact

Having determined that the claims arise from the same series of occurrences, the second prong of Rule 20—whether "any question of law or fact common to all plaintiffs will arise"—is easily met. As the Court has already explained, the pattern used to show deliberate indifference in each *Monell* claim will be substantially similar, if not identical, for each claim. The claims also raise similar issues of law as

9

to whether the strip searches were justifiably conducted in groups under the Fourth Amendment. So there are many issues of law or fact that are common to all plaintiffs.

Defendants argue that proving notice and the County's indifference will raise issues individual to each Plaintiff. Indeed, when denying class certification in this case, the Sixth Circuit noted, "Wayne County must have had notice of the unconstitutional conduct and been deliberately indifferent to it at the time each class member allegedly suffered the unconstitutional search. Yet what the County did and did not know and what actions it did or did not take in response will almost certainly vary from year to year, month to month, and even day to day." *Woodall v. Wayne Cnty., Mich.*, No. 20-1705, 2021 WL 5298537, at *7 (6th Cir. Nov. 15, 2021).

But this case looks very different now. With the benefit of discovery and dispositive motions, the notice and deliberate indifference issues across the claims have more in common now than they did when the case was before the Sixth Circuit. For one, the time period for the *Monell* claims left to be tried is significantly narrower than the proposed class period the Sixth Circuit considered. Here, Plaintiffs' searches all happened at some point between February and August 2013—a six-month period. Indeed, though the Sixth Circuit stated that the County's knowledge could vary "day to day," it was most concerned with the years' difference between some of the potential class members' claims. *See Woodall*, 2021 WL 5298537, at *7 (explaining that "a class member in, say, 2019, might have a stronger or weaker claim of deliberate indifference than a class member in, say, 2014" because the County may have received additional notice of the violations in the intervening five years, and

10

concluding, "[d]eliberate indifference in 2019 is not deliberate indifference in 2014"). Further, even if Plaintiffs' claims were severed, a single plaintiff may have been searched in February 2013 and again in July 2013. So the issues from presenting proof of the County's knowledge over several months would not be eliminated merely by conducting separate trials.

And based on the Court's review of the summary-judgment record, proof of deliberate indifference and at least some proof of knowledge will be common to all plaintiffs. Plaintiffs have suggested that largely (if not exactly) the same witness testimony will be used to show the pattern of violations—likely because their searches all took place in a relatively short period. (*See* ECF No. 42, PageID.3818 ("Plaintiffs would have to bring dozens of witnesses to court on four separate occasions and risk that such witnesses would be hesitant to do so four separate times.").) As for knowledge, what the County knew from the prior-filed *Weathington* suit is the same for each plaintiff. Though there will be minor differences depending on whether the jury believes a particular plaintiff reported her searches and when she did so, there is at least some overlap as to notice. And the County has not thus far argued that its knowledge varied on certain days or months; so it seems like it will not have to present substantially different defenses as to each plaintiff. Rather, at summary judgment, the County broadly argued that there is no evidence it was on notice of these searches for any of the women involved. So the Court cannot find that any one plaintiff faces such different circumstances as to notice or knowledge that she lacks common questions with the others.

11

With that, the Court finds that a common question of law or fact will arise between all four plaintiffs' claims, and so both prongs of Rule 20 are satisfied and Plaintiffs' claims have not been misjoined.

### C. Rule 42

Even if the parties are properly joined under Rule 20, however, the Court retains discretion to sever their trials for "convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b). It would undoubtedly be inconvenient and inefficient to sever the trials. So only prejudice is at issue here. Defendants argue that it would be prejudicial if all plaintiffs were allowed to try their cases together as it would allow them to "circumvent" Federal Rule of Evidence 404(b) and introduce other acts evidence for propensity purposes. (ECF No. 141, PageID.3799.)

The Court has already addressed a similar argument made by Defendants in its opinion on the motions for summary judgment. There, it explained that the evidence of a pattern of unconstitutional strip searches will not be used for propensity purposes, but rather "goes toward showing the absence of mistake and lack of accident, i.e., that the County deliberately ignored such a pattern and allowed the violations to continue. In fact, deliberate indifference 'does not mean a collection of sloppy, or even reckless oversights; it means evidence showing an obvious deliberate indifference to the alleged violation.'" *Woodall*, 590 F. Supp. 3d at 1009 (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005)). "So," the Court continued, "beyond being evidence that goes to the central issue—whether there is *Monell* liability based on a pattern or practice of constitutional violations—Hearst

12

may also use evidence of such a pattern to show that the County was not merely negligent but deliberate in its failure to act." *Id.* As the Court pointed out, such evidence is necessary to prove the pattern that is core to Plaintiffs' *Monell* claims based on a custom of acquiescence. The other plaintiffs' searches are part of said pattern, and thus are not being used for propensity, but to prove a central element of the claim.

Indeed, it is difficult to see how a trial about a pattern of unconstitutional searches could proceed without the jury hearing evidence from different witnesses regarding the strip searches they each experienced. This would be the case even if each *Monell* claim was severed as the Court could not exclude all pattern evidence. See *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015) (finding that "the district court's categorical exclusion of evidence [such as prior complaints and discipline] relevant to establishing Velazquez's theory of municipal liability [was] an abuse of discretion," and noting that any 404(b) prejudice that resulted from the introduction of such evidence could be cured by a jury instruction); *Williams v. City of Philadelphia*, No. CIV.A. 13-207, 2014 WL 1632218, at *2 (E.D. Pa. Apr. 23, 2014) ("The following complaints also are relevant to Williams' *Monell* claim against the City and his claims against Officer Boyer because they show a pattern of similar constitutional violations involving complaints about searches. . . . The evidence does not implicate Officer Boyer's propensity to violate the law; rather, it establishes his plan or modus operandi for justifying his actions."). What little extra prejudice that results from the jury hearing from the four plaintiffs in addition to the other non-

13

plaintiff witnesses is not enough for the Court to sever the trials. And it is certainly not enough when considering the added delay and use of resources in conducting four separate trials, each of which would require testimony from incarcerated women who need a court order and state supervision in order to testify.

Nevertheless, though not necessarily a violation of Federal Rules of Evidence 403 or 404(b), there is potential spillover prejudice against Graham from the jury determining Hearst's individual claim against her after hearing evidence of a pattern of violations. And of course, absent *Monell* claims, such pattern evidence would not be introduced to try Hearst's claim against Graham.

So to eliminate the potential for spillover prejudice to Graham, while balancing Plaintiffs' concerns about efficiency and delay, the Court will bifurcate Hearst's claim against Graham from Plaintiffs' *Monell* claims. Accordingly, the jury will first hear opening statements, evidence, and closing arguments on Hearst's claim against Graham. It will then deliberate and reach a verdict on that claim. Then, the same jury will hear opening statements, evidence, and closing arguments on all four plaintiffs' *Monell* claims, which will include the pattern evidence. It will then deliberate on the *Monell* claims and reach a verdict on those four claims. Thus, the jury will not hear the pattern evidence until after it has decided Hearst's individual claim against Graham. But there will be minimal delay as these two trials will happen one after another and during the same period as is currently allotted for the trial (March 1 through March 17). At most, bifurcation will add a few more days to the trial time, but this was already accounted for in the schedule.

## II.

In sum, the Court finds that the four *Monell* claims are not misjoined, and thus declines to sever them. Those four claims will be tried together.

To eliminate any spillover prejudice that may affect Hearst's claim against Graham, the Court bifurcates the individual claim against Graham from the four *Monell* claims. The Court will first try the claim against Graham, and then, using the same jury, it will try Plaintiffs' *Monell* claims. The two trials will occur right after each other in accordance with the current trial schedule (ECF No. 148).

The Court also directs the parties to submit one joint final pretrial order that includes separate sections for each trial, in which the parties should specify which exhibits and witnesses will be used in each trial (even if there is overlap). The parties should also submit separate jury instructions and verdict forms for each trial. The parties should submit only one joint statement of the case and only one set of proposed voir dire questions.

SO ORDERED.

Dated: January 6, 2023

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE