UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATRINA WOODALL, KATANA
JOHNSON, KELY DAVIS, and
LATOYA HEARST,

        Plaintiffs,

v.

WAYNE COUNTY and
TERI GRAHAM,

        Defendants.

Case No. 17-13707
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING MOTION TO INTERVENE [182]**

---

Four women—Katrina Woodall, Katana Johnson, Kelly Davis, and Latoya Hearst—were incarcerated at the Wayne County Jail at various points in 2013 and 2014. They say they were strip-searched by Jail officers in humiliating ways. More specifically, they alleged that Officer Teri Graham, who worked the Jail's registry, strip searched them in groups of five or more, made derogatory comments about their bodies, allowed men to see them being strip-searched, and maintained an unsanitary environment. And because many women claimed they were subject to similar strip searches, Plaintiffs accused Wayne County, the municipality in charge of the Jail, of knowing of a pattern of constitutional violations yet allowing the violations to continue.

After more than five years of litigation—including two motions for class certification, an interlocutory appeal, motions for summary judgment, a motion for

reconsideration of summary judgment, post-summary-judgment depositions, 12 motions in limine, and extensive settlement negotiations—the case resolved on the eve of trial. (Minute entry, Feb. 24, 2023.)

Or so it seemed. Plaintiffs have recently moved this Court to permit eight additional women to intervene in this completed litigation. (ECF No. 182.) Plaintiffs argue that, "In light of the fact that the named Plaintiffs in this action have resolved their claims against Defendants, and given the open issue of class certification for women who were housed in the jail on or after November 14, 2014, several such putative class members now seek to intervene in this action to assert their claims both individually and on behalf of the class." (ECF No. 182, PageID.4950.)

The Court does not need a response. It will deny this motion.

## I.

Federal Rule of Civil Procedure 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." To determine timeliness, the Court considers five factors: "(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating

against or in favor of intervention." *Kirsch v. Dean*, 733 F. App'x 268, 274–75 (6th Cir. 2018) (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

None of these factors favor permitting intervention in this case.

## A.

The first factor—the point to which the suit has progressed—is perhaps the easiest to decide. The Sixth Circuit has held that the first factor is less about "[t]he absolute measure of time between the filing of the complaint and the motion to intervene" and instead, focuses on "what steps occurred along the litigation continuum during this period of time." *Kirsch*, 733 F. App'x at 275. Here, every step along the litigation continuum has been taken. This case has been completely resolved. Plaintiffs entered into an agreement that fully disposes of their remaining claims in this litigation. So this factor weighs heavily against allowing intervention.

## B.

That brings the Court to the purpose for which intervention is sought. It is this factor, according to Plaintiffs, which weighs so much in their favor that the Court should allow intervention so intervenors can pursue what they call an "open" issue.[1] To understand their argument, however, the Court must provide some background on class certification in this case.

Plaintiffs filed their complaint on November 14, 2017. (ECF No. 1.) Their first motion for class certification was denied without prejudice because "the three-year

---

[1] Plaintiffs combine the purpose factor with the "unusual circumstances" factor, so the Court will not address that factor separately.

statute of limitations bars claims which accrued before November 14, 2014." *Woodall v. Cnty. of Wayne*, No. 17-13707, 2019 WL 1354275, at *4 (E.D. Mich. Mar. 26, 2019). This determination was based on the Supreme Court's decision in *China Agritech*, which held that upon denial of a class-certification motion, a putative class member "may not commence a class action anew beyond the time allowed in the applicable statute of limitations[.]" *See* 138 S. Ct. 1800, 1804 (2018). In other words, prior uncertified class actions would not toll the statute of limitations for successive class actions. Because this litigation commenced in November 2017, it could only include class claims for actions that arose in November 2014 and beyond.

So Plaintiffs renewed their motion for class certification, this time asking for certification of a class for the period after November 2014. This motion was granted and four classes were certified, all of which covered women who were housed at the Wayne County Jail "from the period of November 14, 2014 until the date of judgment or settlement of this case[.]" *Woodall v. Cnty. of Wayne*, No. 17-13707, 2020 WL 373073, at *2 (E.D. Mich. Jan. 23, 2020).

On interlocutory appeal, the Sixth Circuit reversed the certification order. *See Woodall v. Wayne Cnty., Michigan*, No. 20-1705, 2021 WL 5298537 (6th Cir. Nov. 15, 2021). It first found that under Federal Rule of Civil Procedure 23(a), the commonality, typicality, and adequacy-of-representation requirements were not satisfied. *Id.* at *4. For commonality and typicality, the Sixth Circuit raised two issues: first, that "the putative class claims all accrued after November 14, 2014; but the named plaintiffs' claims all accrued before that date," and second, that the district

court failed to recognize that the municipal-liability claims would depend on "an individualized determination of the balancing of the particular need for the search against the personal intrusion the search entailed." *Id.* And it found that Plaintiffs were inadequate representatives because they were not part of the proposed class— their claims accrued before November 2014. *Id.* at *5.

The Sixth Circuit also found that the proposed class did not meet the predominance requirement of Rule 23(b)(3): "Some elements for proving the general policy under a *Monell* inaction theory, the unconstitutionality of the search in each class member's case, and the causal connection between the two would all have to be proven on an individual basis. When damages are added to the mix, individual issues predominate." *Woodall*, 2021 WL 5298537, at *8 (6th Cir. Nov. 15, 2021); *see also id.* at n.3 ("[T]he class does not meet the certification requirements under Rule 23(a) and (b)(3)."). Providing further color to this conclusion, the Sixth Circuit noted, "Perhaps the first element—a clear pattern of unconstitutional strip searches—could be established for each of the four subclasses. But that is the only element that could conceivably be resolved in this common fashion. Insurmountable timing issues, for example, would bar any class-wide treatment of the second (notice) and third (deliberate indifference) elements. *Id.* at *7.

Turning back to the instant motion, Plaintiffs explain that intervenors wish to bring "claims for women who were improperly strip searched in the jail on or after November 14, 2014[.]" (ECF No. 183, PageID.4952.) The intent is obvious—these claims must be brought in this action or else they will be barred as untimely. (*Id.* at

PageID.4953.) In other words, if the proposed intervenors file a new class action, that putative class could only be for claims arising in the last three years per *China Agritech*. That means many of these intervenors—whose claims arose in 2015 to 2020—would be out of luck. So, according to Plaintiffs, "[w]ithout intervention, the class claims would be abandoned resulting in a windfall to Defendants despite a colorable showing of pervasive misconduct." (ECF No. 182, PageID.4952.)

This argument, however, is based on the fundamentally flawed notion that the Sixth Circuit reversed class certification in this litigation only because it found that Plaintiffs were inadequate class representatives. It ignores the other findings of the Sixth Circuit, which extinguished certification for the same class claims intervenors say they wish to pursue. Plaintiffs say that "there was not a definitive determination as to the appropriateness of class certification."(ECF No. 182, PageID.4953.) This is, at best, a mistaken reading of the Sixth Circuit's opinion. The Court specifically found that "[t]he record is clear that class adjudication is not proper." *Woodall*, 2021 WL 5298537, at *8. And, contrary to Plaintiffs' assertion that this finding was based only on the fact that Plaintiffs were not members of the proposed class, the Sixth Circuit also found predominance would be an issue with these specific claims. *Id.* at *8. To reiterate, it stated that, "[i]nsurmountable timing issues, for example, would bar any class-wide treatment of the second (notice) and third (deliberate indifference) elements." *Id.* at *7. So even if intervenors were proper class representatives, they would run into the same issues the Sixth Circuit noted previously—that "some elements for proving the general policy under a *Monell* inaction theory, the

unconstitutionality of the search in each class member's case, and the causal connection between the two would all have to be proven on an individual basis." *See id.* at *8.

In short, the Sixth Circuit already decided the class-certification issue on interlocutory appeal and found that class certification was not appropriate. Such a determination governs any further proceedings in this case under the law-of-the-case doctrine. "The purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*" *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (internal citations omitted). The doctrine serves a practical purpose "to encourage efficient litigation and deter indefatigable diehards." *Id.* at 740. And as the Fifth Circuit has stated, an interlocutory appeal on class certification should be "the end of the matter." *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 703 (5th Cir. 2010); *see also In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) ("Of course, a district court's discretion to 'alter[ ] or amend [ ] [a class action ruling] before final judgment,' cannot be exercised in conflict with an appellate ruling after a Rule 23(f) appeal." (citing see Fed. R. Civ. P. 23(c)(1)(C))). Indeed, adjudicating such an appeal is intended to "permit the parties to proceed in confidence about the scope and stakes of the case thereafter." *Gene & Gene, L.L.C.*, 624 F.3d at 704.

Here, the very purpose for intervention—to pursue class certification for claims from 2014 to 2020—is prohibited by the Sixth Circuit's decision denying class certification. It cannot be appropriately described as an open issue.

Resisting this conclusion, Plaintiffs point to the Supreme Court's decision in *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977). There, the Court held that a putative class member timely moved to intervene after final judgment in order to appeal the district court's denial of class certification. *See Clarke v. Baptist Mem'l Healthcare Corp.*, 641 F. App'x 520, 524 (6th Cir. 2016) ("The motion to intervene was timely because the respondent filed her motion within the time period in which the named plaintiffs could have taken an appeal." (citing *McDonald*, 432 U.S. at 396)). But an essential fact distinguishes this case from *McDonald*—an interlocutory appeal of the class-certification order was already taken. In *McDonald*, the Court noted that, "[t]he critical fact here is that once the entry of final judgment made the adverse class determination appealable, the respondent quickly sought to enter the litigation. In short, as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests." *McDonald*, 432 U.S. at 394. Here, that very interest of class certification was already protected—on appeal, Plaintiffs argued in favor of upholding the class-certification ruling. Upon denial of certification following the appeal, that specific interest in appealing the district court's order was lost. And intervenors did not intervene "as soon as it became clear . . . that the interests of the unnamed class members would no longer be protected." So *McDonald* does not persuade the Court that the purpose for intervening weighs in favor of granting the motion.

The other cases Plaintiffs rely on fare no better. *See In re AEP Erisa Litig.*, No. 2:03-cv-67, 2009 WL 614951, at *5 (S.D. Ohio Mar. 6, 2009) (allowing intervention one month after the district court denied class certification based on inadequacy of representation and where "[t]he Court made no findings with respect to any other factor necessary to determine if class certification is appropriate"); *Shields v. Washington Bancorporation*, No. CIV. A. 90-1101, 1992 WL 88004, at *1 (D.D.C. Apr. 7, 1992) (allowing intervention where district court denied class certification based on an inadequate class representative, but where in that same opinion "the court implied that this case would be most appropriately resolved as a class action"); *In re Crazy Eddie Sec. Litig.*, 802 F. Supp. 804, 813 (E.D.N.Y. 1992) (allowing tolling of statute of limitations "where the court certifies a class action but later concludes, at the completion of discovery, that the named plaintiffs cannot prove an element of certain claims brought on behalf of the class and are therefore unable to represent adequately the interests of unnamed class members who may have such claims"); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D 193, 202 (S.D.N.Y. Sept. 22, 1992) (considering intervention of a putative class member at the same time as class certification motion). Put simply, the Sixth Circuit decided class certification based on more than adequacy of representation.[2] Since that decision would bar any claims by intervenors to certify such a class, the purpose factor weighs against intervention.

---

[2] Plaintiffs' brief states that the Sixth Circuit opinion "made clear that, while there are other issues to consider, it declined to do so given its decision to reverse class certification based on the inadequacy of the named Plaintiffs." (ECF No. 182, PageID.4955.) The portion of the opinion Plaintiffs cite in support of that assertion actually makes a narrower statement: "Defendants assert that a municipal defendant

## C.

The third factor—the length of time preceding the application to intervene during which the proposed intervenors knew or should have known of their interest in the case—similarly counsels against allowing intervention.

Even taking as true Plaintiffs' position that the Sixth Circuit only denied class certification based on inadequacy of representation, intervenors waited an indefensible amount of time to ask to join this action. The Sixth Circuit's decision was issued on November 15, 2021. Since that time, the Court ruled on Defendants' motions for summary judgment and motion for reconsideration, issued a trial schedule, and decided several motions in limine. The parties conducted post-summary-judgment depositions and attended settlement conferences. And yet, despite having notice that the claims would not be adjudicated on a class-wide basis for over a year, intervenors waited until after the case's resolution to file their motion. The Sixth Circuit has found that even a seven-month delay makes a motion to intervene untimely. *Kirsch*, 733 F. App'x at 277 ("As we have held before, "the seven months preceding the proposed intervenor['s] motion to intervene during which [it] knew or should have known of [its] interest renders [its] motion untimely." (citing *Johnson*, 73 F. App'x 123, 133 (6th Cir. 2003))). This is not a close call.

---

such as Wayne County cannot be held liable under *Monell* absent a precedent finding a constitutional violation separate and apart from the violations alleged against Wayne County. We will not address the merits of this claim prior to a thorough review of class certification requirements." *Woodall v. Wayne Cnty., Michigan*, No. 20-1705, 2021 WL 5298537, at *6 n.2 (6th Cir. Nov. 15, 2021).

And Plaintiffs' argument that they "filed a supplemental brief (ECF No. 121) [on January 17, 2022] in which counsel expressly indicated that it was his intent to seek intervention by several of the putative class members, who were housed in the jail on or after November 14, 2014, to assert the class claims" does not make their motion any more timely. In fact, it cuts against allowing intervention more than a year later because it shows that the intervenors knew of their interest in the case shortly after the Sixth Circuit's decision was issued but delayed filing their motion— without explanation—until after Plaintiffs settled their claims. And Plaintiffs, without objection, continued litigating this case to resolution without further indication that a motion to intervene would be forthcoming. So the third factor also fails to persuade the Court to grant the motion.

## D.

One reading of this timeline is that Plaintiffs intentionally waited until their claims were resolved fully before moving to allow additional plaintiffs to join the litigation. That leads the Court to the fourth factor—prejudice to the other parties. Plaintiffs ensured that *they* would not be prejudiced by this filing by waiting until their claims were fully resolved. But surprisingly, they also argue that "Defendants stand to suffer no prejudice by allowing the intervention." (ECF No. 182, PageID.4956.) That is untenable—to say the least. While it may be true, as Plaintiffs point out, that Defendants had notice of these class claims since the beginning of the litigation, the intervenors had such notice too, but they did nothing. And Defendants are prejudiced by any intervention because they undoubtedly settled the case with

the expectation that it would be fully and finally resolved. The prospect of a global settlement is often one reason why defendants come to the table to settle cases, and there is no reason that would not be true in this case. Beyond that, the parties agreed to the terms of a settlement. And they further agreed that once the written settlement agreement was executed, all that remained to be done in this case was the issuance of a stipulated order of dismissal.

Defendants also proceeded in this case with the expectation that the class-certification issues had been decided after appealing them to the Sixth Circuit. They filed dispositive motions and prepared for trial with that expectation in mind. As the Sixth Circuit put it, "[b]y sitting on the sidelines until after [the parties] had engaged in a months-long motions practice, including several dispositive motions, [intervenor] increased the disruption associated with its proposed intervention." *Kirsch*, 733 F. App'x at 278. So the prejudice to Defendants also weighs against granting the motion.

## II.

In sum, no timeliness factor favors granting a motion to intervene in this concluded litigation. The motion is DENIED.

SO ORDERED.

Dated: April 3, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE